# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No.: 2:15-cv-01024-APG-GWF |
| Plaintiff | **Order (1) Denying Plaintiff's Motion for Summary Judgment, (2) Granting in Part the Defendants' Motions for Summary Judgment, and (3) Reopening Discovery for a Limited Purpose** |
| v. | |
| WOODCREST HOMEOWNERS ASSOCIATION and 6541 PLEASANT PLAINS WY TRUST, | [ECF Nos. 55, 56, 57] |
| Defendants | |

Plaintiff Bank of America, N.A. sues to determine whether its deed of trust still encumbers property located at 6541 Pleasant Plains Way in Las Vegas, Nevada, following a non-judicial foreclosure sale conducted by the homeowners association (HOA), defendant Woodcrest Homeowners Association (Woodcrest). Defendant 6541 Pleasant Wy Trust (Trust) purchased the property at the HOA foreclosure sale. Bank of America seeks a declaration that the deed of trust was not extinguished by the HOA foreclosure sale.[1] The Trust counterclaims to quiet title in itself free and clear of the deed of trust. ECF No. 19.

The parties each move for summary judgment. I deny Bank of America's motion, grant in part Woodcrest's and the Trust's motions, and reopen discovery for a period of 60 days for the parties to develop evidence related to Bank of America's tender attempt and whether payment was excused or would have been futile.

/ / / /

---

[1] Bank of America also asserted various damages claims against Woodcrest, but those claims were dismissed. ECF No. 22.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. "Quiet Title"**

Woodcrest argues Bank of America cannot assert a claim to "quiet title" because it is only a lienholder and thus cannot establish good title in itself. Under Nevada Revised Statutes § 40.010, an "action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." "Thus, any person claiming an interest in the property may seek to determine adverse claims, even if that person does not have title to or possession of the

property." *Nationstar Mortg. LLC v. Amber Hills II Homeowners Ass'n*, No. 2:15-cv-01433-APG-CWH, 2016 WL 1298108, at *3 (D. Nev. Mar. 31, 2016). Accordingly, it is not fatal to Bank of America's declaratory relief claim that it asserts a lien interest rather than title to the property.

**B. Adequate Remedy at Law**

The Trust argues Bank of America cannot resort to equity because it has an adequate remedy at law. Generally, a party cannot obtain an equitable remedy when it has an adequate remedy at law. *Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (Nev. 1982). However, Nevada Revised Statutes § 40.010, which allows for resolving disputes involving adverse interests in property, "essentially codified" Nevada's historical recognition "that courts retain the power to grant equitable relief from a defective foreclosure sale when appropriate . . . ." *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1111-12 (Nev. 2016) (en banc). Thus, while the availability of other remedies (both before and after the sale) may bear on the equities,[2] a claim to set aside an allegedly defective foreclosure sale is necessarily an equitable one that will impact the various interests in the property and their relative priority. Bank of America seeks not just repayment of its loan, but the right to resort to this particular property as security for repayment. No remedy at law could overturn the foreclosure sale and reinstate Bank of America's lien on the property. *See Bank of Am., N.A. v. Diamond Fin., LLC*, 42 N.E.3d 1151, 1156-57 (Mass. 2015) (concluding a legal remedy was inadequate because "money damages would not restore the plaintiff to its rightful senior position"); *Bank of N.Y. Mellon v. Withers*, 771 S.E.2d 762, 765 (N.C. Ct. App. 2015) ("Due to

---

[2] "When sitting in equity, ... courts must consider the entirety of the circumstances that bear upon the equities." *Shadow Wood HOA*, 366 P.3d at 1114.

3

land's unique nature, damage claims against individuals are an inadequate substitute for a first position lien on real property.").

**C. Tender**

Bank of America contends that its offer to pay the superpriority amount qualifies as a tender that discharged the superpriority lien, or its offer to pay combined with the response from Woodcrest's foreclosure agent, Absolute Collection Services, Inc. (Absolute), operates as a tender. Alternatively, Bank of America argues the former homeowner made payments sufficient to discharge the superpriority amount.

The Trust and Woodcrest contend that an offer to pay without actual payment does not constitute a valid tender and that Bank of America thereafter did nothing to protect its interest despite Absolute telling Bank of America additional steps it could take. The Trust also argues Bank of America has not presented evidence showing the prior homeowner's payments were allocated toward the superpriority portion of the HOA's lien.

Tender is an affirmative defense that Bank of America bears the burden of proving. *Res. Grp., LLC as Tr. of E. Sunset Rd. Tr. v. Nev. Ass'n. Servs., Inc.*, 437 P.3d 154, 158 (Nev. 2019) (en banc) ("Payment of a debt is an affirmative defense, which the party asserting has the burden of proving."). "A valid tender of payment operates to discharge a lien or cure a default." *Bank of Am., N.A. v. SFR Investments Pool 1, LLC*, 427 P.3d 113, 117 (Nev. 2018) (en banc) (quotation omitted). For tender to be valid, it must be (1) "payment in full" and (2) either unconditional or "with conditions on which the tendering party has a right to insist." *Id.* at 118. "The only legal conditions which may be attached to a valid tender are either a receipt for full payment or a surrender of the obligation." *Id.* (quotation omitted).

4

"[A] promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender." *Bank of Am., N.A. v. Thomas Jessup, LLC Series VII*, 435 P.3d 1217, 1219 (Nev. 2019) (holding that an "offer to pay the yet-to-be-determined superpriority amount was not sufficient to constitute a valid tender"). But tender is excused if the payment would not have been accepted. *Id.* at 1220.

### *1. Bank of America's Offer to Pay*

On November 16, 2011, Bank of America, through its attorney Rock Jung at the law firm Miles, Bauer, Bergstrom & Winters, LLP, sent a letter to Absolute requesting the superpriority amount and offering to pay it once that amount was determined. ECF No. 55-9 at 6-7 (the Miles Bauer letter). On December 22, 2011, Absolute sent Miles Bauer a fax in which it (1) indicated that Bank of America could obtain a statement of the superpriority amount once the bank forecloses, (2) offered to hold off on the HOA's foreclosure to give Bank of America time to conduct its own foreclosure, and (3) stated it would provide a statement of account for $50. ECF No. 55-8 at 4, 12.[3]

In the initial summary judgment briefing, Bank of America argued that its offer to pay, combined with Absolute's position that there was no superpriority lien and refusal to identify the superpriority amount, operates as a valid tender because an attempt at actual payment was excused as futile. The Trust and Woodcrest responded that a mere offer to pay does not constitute tender. Woodcrest also contended that Absolute did not obstruct Bank of America

---

[3] In its supplemental brief, the Trust argues the evidence does not show that Absolute sent the response fax to Miles Bauer. But the fax referencing this specific property was in Absolute's records and Absolute's status report for the property showed that it responded to the Miles Bauer letter on December 22, 2011. ECF No. 55-8 at 4, 12. Viewing the evidence in the light most favorable to Bank of America on the Trust's motion for summary judgment, a reasonable jury could find Absolute sent the fax.

5

from paying because Bank of America could have paid the $50 fee to obtain the statement of account from which it could have calculated the superpriority amount.

After the initial briefing was completed, Bank of America moved for leave to file supplemental authority because the Supreme Court of Nevada issued *Jessup*, a case with a similar fact pattern regarding tender. I granted that motion and ordered supplemental briefs on *Jessup*'s impact on this case. ECF No. 72.

In its supplemental brief, the Trust argues *Jessup* is distinguishable because *Jessup* involved an appeal following a trial, whereas this case is at summary judgment, and because there was testimony in *Jessup* that is not in the record in this case. Specifically, *Jessup* cites to testimony from Miles Bauer attorney Rock Jung and Absolute employee Kelly Mitchell, but there is no similar testimony from those witnesses in this case. The Trust also argues that Jung's and Mitchell's testimony from other cases suggests that Absolute would have accepted a tender payment had Bank of America actually made it, so tender would not have been futile. Alternatively, the Trust argues that more discovery on this point is needed in this case.

Bank of America responds that *Jessup* controls because Bank of America sent the same Miles Bauer letter in this case as in *Jessup*, and Absolute responded the same way in both cases. As for Mitchell's testimony in another case, Bank of America contends that her testimony was based on Absolute's position in 2012 and 2013 and does not necessarily reflect Absolute's position in 2011 when the letters were exchanged in this case and in *Jessup*. Alternatively, Bank of America requests a 60-day discovery period for the parties to explore whether Absolute sent the response letter and whether Absolute would have accepted payment if actually tendered.

Bank of America's offer to pay the superpriority amount once that amount was determined is not a valid tender as a matter of law. As for whether actual payment would have

been futile, the record is insufficient in this case to support a ruling as a matter of law for any party. Although this case appears to mirror *Jessup*, the record here lacks similar testimony related to this property. Additionally, there is a pending petition for rehearing *en banc* in *Jessup*, and the petition and amici briefs suggest that the evidence in *Jessup*, and in many other cases, shows that Absolute would have accepted a tender payment if one had actually been made, even in 2011. *See Bank of America, N.A. v. Thomas Jessup, LLC Series VII*, No. 73785, Petition for En Banc Reconsideration, Doc. No. 19-20469 at 9; Amicus Brief, Doc. No. 19-21689 at 6-7. The record in this case is silent on these issues. Thus, as the parties suggested in their supplemental briefs, additional discovery is needed to flesh out the issues surrounding Bank of America's attempt at tender and Absolute's response. I adopt Bank of America's suggestion for a 60-day discovery period. Discovery is limited to Bank of America's tender attempt and excuse or futility related to that attempt.

*2. Homeowners' Payments*

Bank of America has not offered sufficient proof that the prior homeowner paid the superpriority lien. There is no evidence that Woodcrest "allocated or had an obligation to allocate the former homeowner's payment" to the superpriority amount. *SFR Investments Pool 1, LLC v. Wells Fargo Bank, N.A.*, No. 70471, 432 P.3d 172, 2018 WL 6609670, at *1 (Nev. 2018); *see also U.S. Bank, Nat'l Ass'n v. Antigua Maintenance Corp.*, No. 2:17-cv-01866-APG-NJK, 2019 WL 3430769, at *4 (D. Nev. July 30, 2019). Even viewing the evidence in the light most favorable to Bank of America on the Trust's motion for summary judgment, the evidence that the homeowner made some payments, without any evidence as to how those payments were applied or were required to be applied, is insufficient for a finding in Bank of America's favor on its affirmative defense at trial.

7

### D. Due Process

Bank of America contends the HOA foreclosure statute as it existed at the time of this sale violated due process under the analysis in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016). Alternatively, Bank of America argues the sale violates due process as applied because Bank of America sought to determine and pay the superpriority amount but Absolute refused to provide that information despite the Conditions, Covenants, & Restrictions (CC&Rs) requiring Woodcrest to give Bank of America access to its records. Woodcrest and the Trust argue Chapter 116 does not violate Bank of America's due process rights. The Trust also argues Bank of America's due process rights were not denied as applied because Bank of America admits it received the foreclosure notices.

To the extent Bank of America's position is based on *Bourne Valley*, that case is no longer good law and Chapter 116 as it existed as of the time of this sale did not violate Bank of America's due process rights. *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623-24 (9th Cir. 2019) (citing *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon*, 422 P.3d 1248 (Nev. 2018) (en banc)); *Amber Hills II Homeowners Ass'n*, 2016 WL 1298108, at *6-9.

As for Bank of America's as-applied challenge, it is not actually a challenge to the statute. The statute says nothing about whether an HOA or its agent must respond to a request for the superpriority amount. In any event, Bank of America fails to demonstrate an as-applied due process violation. To prevail on a procedural due process claim, Bank of America must allege and prove "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). "The fundamental requirements of procedural Due

Process are notice and an opportunity to be heard . . . ." *Conner v. City of Santa Ana*, 897 F.2d 1487, 1492 (9th Cir. 1990) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Bank of America does not dispute that it received the foreclosure notices. Indeed, the Miles Bauer letter was sent in response to the notice of default. ECF No. 55-9 at 6. Bank of America thus had notice that its deed of trust was in jeopardy, and it had an opportunity to take action to protect its deed of trust. Bank of America tried to do so by contacting Absolute for the superpriority amount and Absolute did not provide it. But that is only one avenue by which Bank of America could have protected its interest. For example, Bank of America could have pointed out to Absolute that the CC&Rs state Bank of America is entitled to inspect the HOA's books and records and requested to do so. Or it could have made that request to Woodcrest directly. It could have paid $50 for a statement of account, or taken Absolute up on its offer to delay foreclosure if Bank of America initiated its own foreclosure. And it could have sued to determine the superpriority amount or to enjoin the sale, paid the entire lien and then sued for a refund, or attended the sale and bid on the property. Because Bank of America had notice and an opportunity to protect its interest, it has not shown an as-applied due process violation. *See Bank of New York Mellon Tr. Co., N.A. v. Legends Maint. Corp.*, No. 2:16-cv02567-MMD-GWF, 2019 WL 2176913, at *4 (D. Nev. May 17, 2019) (rejecting similar as applied arguments); *Carrington Mortg. Servs., LLC v. Tapestry at Town Ctr. Homeowners Ass'n*, No. 2:17-cv-01047-RFB-PAL, 2019 WL 1441612, at *5 (D. Nev. Mar. 31, 2019) (same).

**E. FHA**

Bank of America contends that under the Supremacy Clause, the HOA sale could not extinguish the deed of trust because the loan was FHA insured. Nevada's nonjudicial foreclosure scheme for HOA liens is not preempted by the Supremacy Clause. *See, e.g.*, *Las*

*Vegas Development Group, LLC v. Yfantis*, 173 F. Supp. 3d 1046, 1052-53 (D. Nev. 2016); *Renfroe v. Lakeview Loan Servicing, LLC*, 398 P.3d 904, 909 (Nev. 2017) (en banc).

### F. Equitably Setting Aside the Sale

Bank of America argues the sale should be equitably set aside because the property sold for a grossly inadequate price and unfairness infected the sale where (1) Absolute obstructed Bank of America from paying off the superpriority lien and (2) the CC&Rs and Absolute confirmed the sale would not extinguish the deed of trust.[4] Finally, Bank of America asserts that the Trust is not a bona fide purchaser because it knew Bank of America would sue to protect the deed of trust.

The Trust argues the sale should not be set aside because it is a bona fide purchaser and Bank of America should be estopped by the doctrines of unclean hands and failure to mitigate because it took no action to protect its deed of trust before the sale. The Trust also contends that Bank of America has not shown any fraud, oppression, or unfairness bringing about the allegedly low price. Woodcrest likewise argues there is no basis to set aside the sale, particularly where Bank of America did nothing to protect its interest other than request the payoff amount.

In determining whether to equitably set aside an HOA foreclosure sale, there must be evidence that the HOA sold the property for an inadequate price and that "the sale was affected by some element of fraud, unfairness, or oppression." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646, 648-49 (Nev. 2017). Bank of America has

---

[4] Bank of America also contends Absolute distributed the sale proceeds consistent with a subpriority sale. However, the Supreme Court of Nevada is "not persuaded that [an HOA agent's] potentially mistaken belief regarding the effect of the foreclosure sale or its post-sale distribution of proceeds is probative of the sale's actual legal effect." *Bank of Am., N.A. v. Saticoy Bay LLC Series 716 Fiesta Del Rey*, No. 73623, 433 P.3d 262, 2019 WL 292773 (Nev. 2019).

10

"the burden to show that the sale should be set aside in light of [the Trust's] status as the record title holder . . . and the statutory presumptions that the HOA's foreclosure sale complied with NRS Chapter 116's provisions." *Id.* at 646 (internal citations omitted).

"[M]ere inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Id.* at 648. "A grossly inadequate price may require only slight evidence of fraud, unfairness, or oppression to set aside a foreclosure sale." *SFR Investments Pool 1, LLC v. First Horizon Home Loans, a Div. of First Tennessee Bank, N.A.*, 409 P.3d 891, 895 (Nev. 2018) (en banc). However, the fraud, unfairness, or oppression must have "affected the sales price." *Res. Grp., LLC as Tr. of E. Sunset Rd. Tr.*, 437 P.3d at 161.

Even viewing the evidence in the light most favorable to Bank of America, it has not presented evidence sufficient to justify setting aside the sale. Bank of America points to Absolute's position that the superpriority lien did not come into existence until the bank foreclosed. But Bank of America has presented no evidence that Absolute's stated position "unfairly chilled bidding, depressed the price, and unfairly lulled loan servicers and lenders into believing [their] liens were not at risk." ECF No. 55 at 17. Argument of counsel is not evidence.

As to Absolute's refusal to identify the superpriority amount, Bank of America has presented no evidence that this brought about the allegedly inadequate price at the sale. Bank of America presents no evidence, for example, that it did not take other action to preserve its deed of trust because it relied on its tender attempt combined with Absolute's response to conclude its deed of trust was no longer at risk.

Even if Absolute's conduct amounted to unfairness, I still must weigh Bank of America's inaction and the Trust's status as a bona fide purchaser when determining whether to set aside the sale. *Shadow Wood HOA*, 366 P.3d at 1114-15.  As discussed above, Bank of America could have taken a variety of actions to preserve its deed of trust.  Instead, it sent one letter to Absolute, took no other action prior to the sale, and then waited more than two years after the sale to bring this lawsuit.

The Trust, meanwhile, is a bona fide purchaser of the property.  The Trust presents evidence that prior to purchasing the property, it had no knowledge of any potential grounds for the sale to be set aside. ECF No. 57-1.  Bank of America presents no evidence that the Trust had a reason to know that Bank of America made a tender attempt on this property.  The mere fact that the Trust knew there was uncertainty surrounding HOA sales and that Bank of America likely would sue to set aside the sale on some unknown ground does not divest the Trust of bona fide purchaser status. *Shadow Wood HOA*, 366 P.3d at 1115-16.  Considering the "entirety of the circumstances that bear upon the equities," Bank of America has no basis to equitably set aside the sale. *Id.* at 1114; *see also id.* at 1116 ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby[.]").

## II.  CONCLUSION

IT IS THEREFORE ORDERED that plaintiff Bank of America, N.A.'s motion for summary judgment **(ECF No. 55) is DENIED**.

IT IS FURTHER ORDERED that defendant Woodcrest Homeowners Association's motion for summary judgment **(ECF No. 56) is GRANTED in part**.

IT IS FURTHER ORDERED that defendant 6541 Pleasant Plains Wy Trust's motion for summary judgment **(ECF No. 57) is GRANTED in part**.

IT IS FURTHER ORDERED that the only remaining issue for trial is whether plaintiff Bank of America, N.A.'s tender attempt preserved the deed of trust.

IT IS FURTHER ORDERED that discovery is reopened for a period of 60 days from the date of this order and is limited to plaintiff Bank of America, N.A.'s attempt at tender and related issues surrounding excuse and futility.

IT IS FURTHER ORDERED that dispositive motions limited to plaintiff Bank of America, N.A.'s attempt at tender and related issues surrounding excuse and futility may be filed 30 days after the close of discovery.

IT IS FURTHER ORDERED that the proposed joint pretrial order is due 30 days after a ruling on dispositive motions or, if no dispositive motions are filed, 60 days after the close of discovery.

DATED this 21st day of August, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE